IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LINDA B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:24-cv-25-SMD |
| ) | |
| LELAND DUDEK,[1] ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

**OPINION & ORDER**

Plaintiff Linda B. ("Plaintiff") applied for Supplemental Security Income (SSI) on May 25, 2021, alleging she became disabled on May 25, 2021.[2] Tr. 198-206. Plaintiff's application was denied at the initial administrative level and on reconsideration. Tr. 80-196. She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on April 5, 2023, that Plaintiff was not disabled. Tr. 26-47. Plaintiff appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 1-6. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff appeals under 42 U.S.C. § 405(g). For the following reasons,

---

[1] Leland Dudek, the Acting Commissioner of the Social Security Administration, is substituted for Martin J. O'Malley as Defendant in his official capacity in this action. *See* FED. R. CIV. P. 25(d)(1).

[2] Plaintiff originally alleged an onset date of March 17, 2021, but amended that date at the hearing before the ALJ.

the Court AFFIRMS the Commissioner's decision.[3]

## I.     STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform her or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—

---

[3] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 9); Def.'s Consent (Doc. 8).

[4] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy she can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[5] or (2) the testimony of a vocational expert ("VE").[6] *Id.* at 1239-40.

## II.    STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

---

[5] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[6] A vocational expert is an "expert on the kinds of jobs an individual can perform based on her or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 46 years old on her alleged disability onset date. Tr. 80. She has a limited education and past relevant work experience as a cashier checker and as a waitress. Tr. 68-71; 224. Plaintiff alleged disability due to knee and back problems as well as arthritis. Tr. 242.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date. Tr. 31. At step two, the ALJ found Plaintiff suffers from the following severe impairments: status-post left total knee arthroplasty, osteoarthritis, lumbar degenerative disk disease, obesity, hypertension, and chronic kidney disease. Tr. 31. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 31.

The ALJ proceeded to determine Plaintiff's RFC, finding she has the capacity to perform light work with additional functional limitations. Tr. 35. At step four, the ALJ found Plaintiff unable to perform any past relevant work. Tr. 41. At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that jobs exist in significant numbers in the national economy that Plaintiff can perform. Tr. 41. Accordingly, the ALJ found Plaintiff was not disabled from May 25, 2021, through the decision date. Tr. 42.

## IV. PLAINTIFF'S ARGUMENTS

Plaintiff presents three issues for the Court's review:

(1) Whether the ALJ erroneously evaluated Plaintiff's subjective statements about her pain and other symptoms.

(2) Whether the ALJ erred by failing to consider the combined impact of Plaintiff's impairments.

(3) Whether the ALJ erred in her evaluation of medical opinion evidence.

Pl.'s Br. (Doc. 10) at 1. As explained below, the Court finds that the ALJ did not err as to any issue.

## V. ANALYSIS

### 1. The ALJ correctly evaluated Plaintiff's subjective statements about the nature and limiting effects of her symptoms.

When a claimant attempts to establish her disability by her own subjective testimony, the claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a

severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). In evaluating a claimant's subjective symptoms, the ALJ may consider a variety of factors, including objective medical evidence, treatment history, response to medication and other treatments, sources of pain relief, and the claimant's daily activities. *See* 20 C.F.R. § 404.1529(c)(1)-(4). If an ALJ rejects a claimant's testimony, the ALJ "must articulate explicit adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

At the hearing, Plaintiff testified that she has difficulty manipulating objects with her hands, that she needs a right knee replacement due to daily pain, and that she has difficulty walking due to right knee instability. Tr. 58-59. She testified that she can walk for five minutes and stand for up to ten minutes, but that she "has to be moving around" and needs to elevate her left leg within ten minutes of sitting to relieve the swelling and pain. Tr. 59-60. She further testified that she has back pain that requires her to lie down. Tr. 61. The ALJ found that Plaintiff had evidence of an underlying medical condition and that this condition could reasonably be expected to cause her alleged symptoms. Tr. 41. However, the ALJ determined that Plaintiff's statements about the severity of her alleged symptoms were unsupported by the medical evidence. *Id.*

Plaintiff argues that the objective medical evidence supports her subjective testimony and that the ALJ ignored evidence supporting her statements. Pl.'s Br. (Doc. 10) p. 9. Specifically, Plaintiff points to evidence of, *inter alia*, her degenerative disc disease, lower extremity pain, swelling, weakness, shortness of breath, joint effusion, and tender

muscles. *Id.* Had the ALJ properly considered her testimony and this evidence supporting it, Plaintiff argues, the ALJ would have found her unable to work. *Id.* at 10.

The mere existence of impairments does not alone confirm the severity of a claimant's alleged symptoms. *See Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011) (stating "proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work"). Thus, by itself, evidence supporting a diagnosis of an impairment cannot overturn the Commissioner's decision. *Carnes*, 936 F.2d at 1218 ("Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings."); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (per curiam) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."). Further, under the substantial evidence standard of review, the recitation of evidence in support of the claimant's position is not enough to warrant remand. Instead, the claimant must show the absence of substantial evidence supporting the ALJ's findings. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

Here, substantial evidence supports the ALJ's decision to reject Plaintiff's subjective testimony concerning her impairments. In support of her determination that Plaintiff's symptoms were not as limiting as she alleged, the ALJ points to Plaintiff's performance after her left knee arthroplasty in 2021, where medical reports indicate she was doing well and had a stable knee with no complications. Tr. 36, 490-91. At the conclusion of her regular follow up visits with the surgeon's office, the medical notes

7

indicate "excellent range of motion. No instability. No effusion. No erythema or warmth." Tr. 526. These notes, referenced by the ALJ, support the mobility of Plaintiff's left knee. Additionally, the ALJ considered Plaintiff's treatment notes from Community Medical Arts pertaining to her arthritis, which consistently show exam results within normal ranges. *See* Comm'r Br. P. 6; Tr. 35-41; 602; 609; 548-49; 576-79; 580-84; 661-662. And while Plaintiff reported subjective pain at several of these visits (which the ALJ acknowledged), the ALJ cited objective test results and conservative course of treatment as bases for rejecting this pain testimony. Tr. 37. Finally, while Plaintiff points to numerous medical tests occurring between January 2016 and January 2023 to argue that her pain testimony was objectively supported, the ALJ considered many of these medical visits but found them inconsistent with her allegations of debilitating impairments. Pl.'s Br. (Doc. 10) pp. 9-10; Tr. 36-40. Simply put, the Court finds that substantial evidence supports the ALJ's rejection of Plaintiff's subjective testimony, and the Court declines to reweigh the evidence concerning her disability, as she invites the Court to do.

Plaintiff further argues that the ALJ failed to sufficiently explain the reasons for discounting her testimony because the ALJ failed to recite and apply the factors listed in 20 C.F.R. § 416.929(c)(3) and to address certain medical records in the opinion. Pl.'s Br. (Doc 10) pp. 10-11. As for the latter allegation of error, the Eleventh Circuit has repeatedly held that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the ALJ's decision is not a broad rejection that prevents the court from examining whether the ALJ considered the plaintiff's medical condition as a whole. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (internal quotation omitted).

8

Here, the ALJ did not overlook evidence showing Plaintiff's limitations, as the ALJ considered much of the evidence Plaintiff now cites. Thus, the ALJ did not broadly reject Plaintiff's claim, and therefore did not err by failing to explicitly discuss every piece of evidence cited by Plaintiff.

As for her argument that the ALJ did not explicitly recite the § 416.929(c)(3) factors, it is clear from the ALJ's opinion that the ALJ considered Plaintiff's daily activities, her allegations about the location, duration, frequency, intensity, and aggravating factors of her symptoms, her medications and their effects, her treatment, and her efforts at pain relief. Tr. 35-41. And contrary to Plaintiff's assertion, the ALJ conducted a detailed analysis of the objective medical evidence, including the largely normal findings from the Community Medical Arts records. Tr. 35-41. Thus, the Court finds that the ALJ properly explained the reasons for her decision and considered the factors required by 20 C.F.R. § 416.929(c)(3).

Finally, Plaintiff argues that the ALJ improperly considered the conservative course of treatment for her knee injury. Pl.'s Br. (Doc. 10) p. 11-12. The ALJ can consider treatment history in evaluating pain and other subjective symptoms, and a course of conservative treatment or nontreatment can support an ALJ's decision to discredit subjective testimony. 20 C.F.R. § 416.929(c)(3)(v); *see also Wolfe*, 86 F.3d at 1078 (holding that a conservative course of treatment for impairments was substantial evidence supporting a finding of no disability). Though Plaintiff alleges that her inability to afford treatment led her to discontinue treatment, objective medical evidence cited by the ALJ indicates that Plaintiff was doing well despite her lack of treatment. Tr. 36; Tr. 490. As

such, substantial evidence supports the ALJ's decision to discredit Plaintiff's testimony about her subjective symptoms regardless of her ability to pay for treatment.

### 2. The ALJ properly considered the combined impact of Plaintiff's impairments.

At step two of the Social Security benefits framework, the ALJ must determine if a claimant's impairments or combination of impairments are severe. *McCormick v. Comm'r of Soc. Sec.*, 619 F. App'x 855, 858 (11th Cir. 2015). At step three, the ALJ must decide if the claimant's impairments or combination of impairments meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). *Id.* An ALJ's statement that a claimant's severe impairment or combination of impairments is not medically equivalent to those listed in Appendix 1 constitutes substantial evidence that the ALJ considered the combined effect of the claimant's impairments. *Wilson*, 284 F.3d at 1224-25 (citing *Jones v. Dep't of Health & Human Servs.*, 941 F. 2d 1529, 1533 (11th Cir. 1991) (finding that a statement by an ALJ listing the claimant's impairments and concluding they were not alone or in combination covered by Appendix 1 was evidence that the ALJ considered the combined impact of the impairments)).

Plaintiff argues that the ALJ did not consider the combined impact of her impairments resulting from her obesity. Pl.'s Br. (Doc. 10) p. 14. However, after noting that "the functional limitations caused by the medically determined impairment of obesity, alone or in combination with another impairment(s), may medically equal a listing [under Appendix 1]," the ALJ stated that she considered "the cumulative effect of Plaintiff's

10

obesity." Tr. 38. This statement is substantial evidence that the ALJ considered Plaintiff's impairments in combination, including her obesity. *Reliford v. Barnhart*, 157 F. App'x 194, 196 (11th Cir. 2005) ("We have repeatedly held that an ALJ's finding regarding a claimant's 'impairment or combination of impairments' established that the ALJ had indeed considered the impact of the plaintiff's combined impairments."). As such, the ALJ did not err when considering the combined effects of the impairments resulting from Plaintiff's obesity.

### 3. The ALJ's decision to find a medical opinion as "partially persuasive" is supported by substantial evidence.[7]

Plaintiff argues that the ALJ erred by only partially crediting the medical source statement of Dr. Russell, which was prepared by CRNP Deray Williams ("CRNP Williams"),[8] that imposed several work restrictions not included in her RFC. Pl.'s Br. (Doc. 10) p. 16. Had the ALJ deemed the medical opinion persuasive instead of partially persuasive, Plaintiff contends that she could not perform any competitive work. *Id.* at 18.

In evaluating the persuasiveness of a medical source's opinion, an ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4)

---

[7] The Social Security Administration revised its regulations regarding the consideration of medical evidence, applying those revisions to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Blankenship filed her claim on May 25, 2021, (Tr. 250-51), so the revised regulations apply here. *See* 20 C.F.R. § 404.1520c. The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to the medical sources a claimant chooses to use. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021). Accordingly, although Blankenship refers to her medical sources as treating sources, the Court will not.

[8] Blankenship refers to this medical source statement as Dr. Russell's, while the Commissioner refers to it as CRNP Williams's. As the report was prepared by CRNP Williams, the Court will refer to it as CRNP Williams's opinion.

11

specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). These factors are applied "when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). Importantly, then, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Supportability and consistency are the "most important" factors considered by the ALJ. 20 C.F.R. § 404.1520c(a); *Simon*, 2021 WL 4237618, at *3. As such, the ALJ must articulate how these factors were considered in evaluating a medical source's opinion. *See* 20 C.F.R. § 404.1520c(a)-(c); *see also Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021) (holding that while an ALJ need not articulate how she applied each factor to the medical source opinion, the ALJ must state more than broad conclusions, at least with respect to supportability and consistency.). The ALJ may—but is not required to—explain how she considered the other remaining factors. *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)(2)).

Here, Plaintiff visited Community Medical Arts, the treatment facility employing Dr. Russell and CRNP Williams, at least seven times in the months preceding the medical source statement. In June 2021, Plaintiff reported no new complaints to CRNP Williams at a medication refill appointment. Tr. 602. In July 2021, Plaintiff presented to CRNP Williams with normal musculoskeletal exams. Tr. 609. On October 6, 2021, Plaintiff

12

reported no complaints to CRNP Williams and said she was feeling "fairly well." Tr. 542. On October 25, 2021, CRNP Williams noted Plaintiff's obesity and tenderness to palpation of the spine. Tr. 548-49. In December 2021, Plaintiff reported to CRNP Williams for the first time that she had been experiencing pain for the prior five months, despite nearly normal physical results during her prior visits. Tr. 576-79. In January 2022, Plaintiff reported right knee pain, with physical results showing continuing tenderness to palpation of the spine but otherwise presented with generally normal results. Tr. 580-84. In February 2022—the same month that CRNP Williams prepared the medical source statement—Plaintiff reported that her back pain was managed and presented with normal physical and mental evaluations. Tr. 661-662.

CRNP Williams's medical source statement is inconsistent with and unsupported by the objective medical evidence from Plaintiff's visits to Community Medical Arts. Tr. 40. Despite the generally normal results of Plaintiff's physical exams, the medical source statement limited Plaintiff to frequent breaks and a lifting limitation. Tr. 567-68. But because these limitations were inconsistent with Dr. Russell and CRNP Williams's own medical records, the ALJ found that the medical source statement was based on Plaintiff's subjective complaints as opposed to the objective evidence. Tr. 40. Thus, the ALJ credited the parts of CRNP Williams's medical source statement that she found supported by the objective medical evidence, such as the standing/walking limitation, and did not credit the limitations that lacked support from the objective medical evidence. *Id.* The ALJ also noted that the limitations imposed in the medical source statement were not consistent with the overall record. *Id.*

While there may be evidence in the record that could support the additional limitations imposed in the medical source statement, the Court finds that substantial evidence supports the ALJ's decision to reject the medical source statement in part because it lacks supportability and consistency—the two most important factors in evaluating a medical source statement—based on Plaintiff's generally normal clinical findings and other inconsistent evidence in the record, which the ALJ thoroughly discussed throughout the opinion. *See* Tr. 35-41. Accordingly, the ALJ did not err in finding the medical source statement partially persuasive.

## VI. CONCLUSION

As explained above, the Court finds that the ALJ did not commit reversible legal error and that substantial evidence supports the Commissioner's decision. Accordingly, it is ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 19th day of March, 2025.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE